IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| CAREPOINT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:20-cv-1109-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| CAREPOINT HEALTHCARE, LLC, d/b/a | ) | |
| CAREPOINT PHARMACY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on defendant Carepoint Healthcare, LLC, d/b/a Carepoint Pharmacy's ("Carepoint Pharmacy") motion to dismiss or, in the alternative, to transfer venue, ECF No. 12. For the reasons set forth below, the court denies the motion.

## I. BACKGROUND

This is a trademark dispute. Plaintiff Carepoint, Inc. ("Carepoint Inc.") is a healthcare consulting corporation headquartered in Charleston, South Carolina. Carepoint Pharmacy is a national pharmaceutical company that provides prescription medications and other pharmaceutical services to customers nationwide. On September 20, 1994, Carepoint Inc. registered its wordmark, "CAREPOINT" and designmark, ✂ **CarePoint**, with the United States Patent and Trademark Officer ("USPTO") under U.S. Registration No. 1,854,992, (the "Carepoint mark"). Carepoint Inc. alleges that as early as 2013, Carepoint Pharmacy began selling its products to customers in South Carolina. Carepoint Pharmacy contends that these sales make up a very small percentage of its gross national sales.

1

Carepoint Inc. filed a complaint in this court on March 19, 2020, alleging claims of (1) trademark infringement under the Lanham Act, (2) contributory trademark infringement under the Lanham Act, (3) vicarious trademark infringement under the Lanham Act, (4) unfair competition under the Lanham Act, (5) trademark infringement under S.C. Code § 39-15-1160 et seq., (6) trademark infringement under South Carolina common law, (7) unfair competition under the South Carolina Unfair Trade Practices Act ("SCUTPA"), and (8) unjust enrichment. ECF No. 1. Carepoint Pharmacy filed the instant motion to dismiss or, in the alternative, transfer venue on June 15, 2020. ECF No. 12. Carepoint Inc. responded to the motion on July 13, 2020, ECF No. 16, and Carepoint Pharmacy replied on July 20, 2020, ECF No 17. As such, the matter has been fully briefed and is ripe for the court's review.

## II. STANDARD

### A. Motion to Dismiss for Lack of Personal Jurisdiction

When the defendant challenges personal jurisdiction, the plaintiff has the burden of showing that jurisdiction exists. See In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997). When the court decides a personal jurisdiction challenge without an evidentiary hearing, the plaintiff must prove a prima facie case of personal jurisdiction. See Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). "In considering the challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." In re Celotex Corp., 124 F.3d at 628 (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). However, the court need not "credit conclusory allegations or draw farfetched inferences." Masselli & Lane, PC v. Miller &

Schuh, PA, 2000 WL 691100, at *1 (4th Cir. May 30, 2000) (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)).

### B. Motion to Transfer Venue

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought or to any district . . . to which all parties have consented." 28 U.S.C. § 1404(a). The burden is on the moving party to show by a preponderance of the evidence "that transfer to another forum is proper." State Farm Fire & Cas. Co. v. Blanton, 2014 WL 7146980, at *2 (D.S.C. Dec. 15, 2014) (citations omitted). The decision to transfer a case to another venue is "committed to the discretion of the district court[,]" In re Ralston Purina Co., 726 F.2d 1002, 1005 (4th Cir. 1984) (citations omitted), requiring the court to undertake "an individualized, case-by-case consideration of convenience and fairness" and "to weigh in the balance a number of case-specific factors," Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (citation omitted).

### III. DISCUSSION

Carepoint Pharmacy requests dismissal of this action on the ground that the court does not have personal jurisdiction over it. Additionally, Carepoint Pharmacy argues that venue is improper and requests that the court either dismiss the matter or transfer it to the Northern District of Illinois in the interests of fairness and for the convenience of the parties. In response, Carepoint Inc. argues that the court can exercise specific personal jurisdiction over Carepoint Pharmacy based on Carepoint Pharmacy's suit-related contacts with South Carolina, namely, its sales in the state and licensure with the state. Further, Carepoint Inc. argues that a transfer of the matter would serve neither justice nor

3

fairness. Because the court agrees with Carepoint Inc., it denies Carepoint Pharmacy's motion.

### A. Personal Jurisdiction

Resolution of the instant motion requires an analysis of the court's ability to exercise specific jurisdiction over Carepoint Pharmacy under South Carolina's long-arm statute and in consideration of Carepoint Pharmacy's protections under the Due Process Clause of the Constitution. Because Carepoint Pharmacy has purposefully availed itself to suit in South Carolina through the direct sale of pharmaceutical products and because Carepoint Inc.'s claims arise out of those sales, the court finds that exercising specific personal jurisdiction over Carepoint Pharmacy is proper. Accordingly, Carepoint Pharmacy's motion must be denied.

In evaluating a challenge to personal jurisdiction under a state's long-arm statute, the court engages in a two-step analysis. Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). First, the long-arm statute must authorize the exercise of jurisdiction under the facts presented. Id. Second, if the statute does authorize jurisdiction, then the court must determine if the statutory assertion of personal jurisdiction is consistent with due process. Id. South Carolina's long-arm statute extends its reach to the outer limits allowed by the Due Process Clause. Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002). Consequently, the only question before the court is whether the exercise of personal jurisdiction would violate due process. ESAB Grp., Inc. v. Centricut, LLC, 34 F.Supp.2d 323, 328 (D.S.C. 1999).

The due process test for personal jurisdiction involves two components: minimum contacts and fairness. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286

(1980). Under the minimum contacts test, a nonresident defendant must have certain minimum contacts such that the suit does not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement, 326 U.S. 310, 316 (1945). Due process is satisfied if the court asserts personal jurisdiction over a defendant who "purposefully avails itself of the privilege of conducting activities within the forum state," Hanson v. Denckla, 357 U.S. 235, 253 (1958), such that it "should reasonably anticipate being haled into court there," World-Wide Volkswagen, 444 U.S. at 297. After a showing of the defendant's purposeful availment, the reasonableness inquiry balances any burden on the defendant against countervailing concerns such as the plaintiff's interest in obtaining relief and the forum state's interest in the controversy. See id. at 292.

Specific jurisdiction arises when a cause of action is related to the defendant's activities within the forum state.[1] See S.C. Code Ann. § 36-2-803; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). The Fourth Circuit applies a three-part test when evaluating the propriety of exercising specific jurisdiction: (1) whether the defendant purposely availed itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2)

---

[1] The parties agree that the court lacks general personal jurisdiction over Carepoint Pharmacy. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations . . . when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). Subject only to narrow exception, corporate defendants are "essentially at home" in the states under the laws of which they were incorporated and in which they have their principal place of business. See Daimler AG v. Bauman, 571 U.S. 117, 127 (2014). Carepoint Pharmacy was not organized under the laws of South Carolina and maintains its principal place of business in Illinois. As such, Carepoint Pharmacy is not subject to general personal jurisdiction in South Carolina.

whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable." Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215–16 (4th Cir. 2001) (citing Helicopteros, 466 U.S. at 414–16; Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 476–77 (1985)). To show that an exercise of specific jurisdiction over a defendant comports with due process, a plaintiff "must prevail on each prong." Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 189 (4th Cir. 2016).

In conducting a specific jurisdiction inquiry, a district court must "direct [its] focus to the quality and nature of [the defendant's] contacts." Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 397 (4th Cir. 2003). However, the Fourth Circuit has made clear that "[e]ven a single contact may be sufficient" to support a court's exercise of specific jurisdiction "when the cause of action arises out of that single contact, provided that the principle of 'fair play and substantial justice' is not thereby offended." Id. (citing Nichols v. G.D. Searle & Co., 783 F. Supp. 233, 238 (D. Md. 1992), aff'd, 991 F.2d 1195 (4th Cir. 1993)).

Carepoint Inc. points to several of activities of Carepoint Pharmacy to show that Carepoint Pharmacy has purposefully availed itself of the privilege of conducting business in South Carolina. First, Carepoint Pharmacy's CEO has declared that Carepoint Pharmacy makes sales to customers in South Carolina. See ECF No. 12-2 ¶ 9 ("Carepoint Pharmacy has conducted minimal sales of pharmaceutical prescriptions and products to customers in South Carolina."). In 2019, Carepoint Pharmacy made $26,000 selling prescriptions and products to South Carolina customers. Id. at ¶ 10. Further, to accomplish those sales, Carepoint Pharmacy obtained a non-resident permit on January

24, 2013 for the purpose of distributing prescription drugs to customers in South Carolina. See ECF No. 16-5 at 49. Carepoint Pharmacy's application for the permit states, "I will comply with the Code of Laws of the South Carolina Pharmacy Practice Act and that I understand that I am responsible for any violation(s) occurring during my tenure." Id. at 52. Carepoint Pharmacy has renewed its permit each year since 2013, a process that requires paperwork and the payment of a fee. See, e.g., id. at 4–5. Carepoint Pharmacy's current South Carolina permit will remain active until March 31, 2022. These activities clearly show that Carepoint Pharmacy has "purposefully avail[ed] itself of the privilege of conducting activities within the forum state," Hanson, 357 U.S. at 253, such that it "should reasonably anticipate being haled into court" in South Carolina on claims related to its in-state sales, World-Wide Volkswagen, 444 U.S. at 297.

     Carepoint Pharmacy has presented evidence that its sales to South Carolina make a very small percentage of their national sales. See ECF No. 12-3 ¶ 10 ("Carepoint Pharmacy's sales in South Carolina represent less than one third of one percent of Carepoint Pharmacy's total annual sales since 2013."). Additionally, Carepoint Pharmacy has noted the absence of certain contacts with South Carolina: it does not own property in the state, it does not have employees in the state; it does not advertise in the state; it has neither a telephone number nor a bank account in the state. However, the contacts that are critical to the court's specific jurisdiction analysis are not the contacts that Carepoint Pharmacy lacks with South Carolina but the contacts that Carepoint Pharmacy does have with the state. Courts have consistently found that sales made within a forum state justify an exercise of specific jurisdiction, even where those sales make a small percentage of the defendant's gross sales. See, e.g., Thousand Oaks Barrel

7

Co., LLC v. Deep S. Barrels LLC, 241 F. Supp. 3d 708, 716 (E.D. Va. 2017) (collecting cases).  Indeed, the purpose of the doctrine of specific jurisdiction is to hold an out-of-state defendant accountable for unlawful acts that it directs at a forum state.  While Carepoint Pharmacy's licensure alone might not constitute a contact that sufficiently avails it to litigation in this state, there is no doubt that its sale of allegedly infringing products directly to customers in South Carolina constitutes an availing activity worthy of the court's exercise of specific jurisdiction.  See Carefirst, 334 F.3d at 397 ("Even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact . . . .").[2]

       The fact that a single purposefully availing contact with a forum state can support a court's exercise of personal jurisdiction makes good sense.  By way of example, where a manufacturer sends a single dangerous product into a forum state and a citizen of that state purchases the product and injures himself as a result, justice demands that the citizen be able to bring suit against the manufacturer in the state in which he was injured and to which the manufacturer sent the dangerous product, regardless of whether the

---

[2] To support its contention that limited sales into a forum state cannot subject a foreign defendant personal jurisdiction in that state, Carepoint Pharmacy relies on two cases, Fed. Ins. Co. v. Lake Shore Inc., 886 F.2d 654 (4th Cir. 1989) and ESAB Grp., Inc. v. Centricut, LLC, 34 F. Supp. 2d 323 (D.S.C. 1999).  In each of those cases, the plaintiff's claim did not arise from sales that the foreign defendant made directly to the forum state.  Instead, the plaintiff's argument for personal jurisdiction was premised on "stream-of-commerce" doctrine, under which a foreign defendant may be subject to suit in a forum state where that defendant placed a good in the stream of commerce and the good eventually made its way into the forum where it caused harm.  Those are not the facts of this case.  Here, Carepoint Pharmacy made direct sales into the South Carolina, and Carepoint Inc. alleges that those direct sales to the forum caused harm.  Therefore, stream-of-commerce law is irrelevant to the court's inquiry and Carepoint Pharmacy's citations do nothing to persuade the court that its exercise of personal jurisdiction is improper.

manufacture has any additional meaningful contacts with the forum state. Likewise, where a foreign entity sells products in South Carolina and those products allegedly infringe upon a South Carolina entity's intellectual property rights, the South Carolina entity should be able to bring suit in South Carolina, where the foreign entity sold the allegedly infringing products and where the South Carolina entity is experiencing harm. Rightfully, the law in this area reflects common sense and permits just that. Therefore, court finds that Carepoint Pharmacy has purposefully availing contacts with South Carolina.

Next, the court must consider whether Carepoint Inc.'s claims "arise from" Carepoint Pharmacy's purposefully availing contacts with South Carolina. This inquiry is a relatively simple one. Carepoint Inc. alleges that Carepoint Pharmacy's logo infringes on its registered trademark. Specifically, Carepoint Inc. alleges that it has been harmed by Carepoint Pharmacy's use of the mark in South Carolina. Carepoint Inc. has alleged that Carepoint Pharmacy has made sales of its products, which Carepoint Inc. alleges bore the allegedly infringing logo, to customers in South Carolina. See ECF No. 1, Compl. ¶ 73 ("[Pharmaceutical prescription products [sold in South Carolina] have included a label . . . that is confusingly similar to the Carepoint Trademark."). Thus, the court finds that Carepoint Inc.'s claims "arise out of" Carepoint Pharmacy's South Carolina-related activities, i.e., its sales to citizens of the forum state.

Having found that Carepoint Pharmacy purposefully availed itself to South Carolina and that Carepoint Inc.'s claims arise from that availment, the court must determine whether its exercise of personal jurisdiction over Carepoint Pharmacy would be constitutionally reasonable. Although constitutional reasonableness is a "nebulous

concept," Nolan, 259 F.3d at 217, courts should determine whether an exercise of specific jurisdiction is reasonable by evaluating: "[1] the burden on the defendant, [2] the forum State's interest in adjudicating the dispute, [3] the plaintiff's interest in obtaining convenient and effective relief, [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [5] the shared interest of the several States in furthering fundamental substantive social policies," Burger King, 471 U.S. at 477 (citing World-Wide Volkswagen, 444 U.S. at 292 (internal quotation marks omitted)).

      The first reasonableness factor weighs against exercising specific jurisdiction, as Carepoint Pharmacy is headquartered in Illinois, where likely defense witnesses and evidence are also located. However, under the second factor, South Carolina has a strong interest in adjudicating a trademark dispute in which a South Carolina corporation alleges infringement based on in-state sales by an out-of-state entity. Third, Carepoint Inc. is a South Carolina corporation that alleges infringement as a result of customer confusion within South Carolina. It would be a considerable burden to force Carepoint Inc. to litigate this matter in Illinois when it alleges infringement in South Carolina. Moreover, Carepoint Inc. is headquartered locally and does not enjoy the same national reach as Carepoint Pharmacy. The remaining factors also weigh in favor of reasonableness, as this district is an efficient forum and litigation in South Carolina promotes the policy of the Lanham Act, which seeks to protect all citizens from practices that infringe upon intellectual property. Moreover, the Fourth Circuit has noted that "the inequity of being haled into a foreign forum is mitigated if it was reasonably foreseeable that the defendant could be subject to suit there." CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 296 (4th Cir. 2009). Carepoint Pharmacy should understand that defending a

lawsuit in South Carolina was a realistic possibility because it both made direct sales into the forum and explicitly agreed in its permit application to be bound by South Carolina law. Therefore, court finds that its exercise of specific jurisdiction over Carepoint Pharmacy is reasonable.

Carepoint Pharmacy urges the court to utilize the "effects test" established by the Supreme Court in Calder v. Jones, 465 U.S. 783 (1984), and employed by the Fourth Circuit in Carefirst, 334 F.3d 390. Carepoint Pharmacy argues that the effects test precludes the court from exercising specific jurisdiction over it. Under the effects test, a court may exercise specific jurisdiction over an out-of-state defendant that has "acted outside of the forum in a manner that injures someone residing in the forum" if "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum." Carefirst, 334 F.3d at 397, 403 n.7. However, these cases, and consequently the effects test, are not applicable to this case.

In Calder, the Supreme Court considered a California court's exercise of specific personal jurisdiction over a Florida newspaper reporter. There, the reporter ran a story about the plaintiff in a Florida newspaper. The Calder plaintiff brought a libel claim against the reporter in California, arguing that personal jurisdiction existed because she felt the effects of the reporter's intentional tort in California. The court noted that the reporter reviewed and edited the article about the plaintiff in Florida but had "no other relevant contacts with California." Calder, 465 U.S. at 786. Therefore, the court established the "effects test" to provide an avenue for courts to exercise specific

jurisdiction over defendants who commit intentional torts outside of the forum state that injure plaintiffs within the forum state. The Fourth Circuit was faced with a similar jurisdictional issue in Carefirst. There, the court considered whether an out-of-state entity could be subject to personal jurisdiction based on its allegedly infringing use of the plaintiff's trademark outside of the forum state. Carefirst, 334 F.3d at 397. According to the plaintiff, although there was no evidence that the defendant used the trademark within the forum, the defendant felt the effects of the infringing, out-of-state use within the forum. The court noted that the defendant's only contact with the forum state was "its operation of an Internet website, accessible from anywhere in the world . . . ." Id. at 394.

The effects test is inapplicable here because Carepoint Pharmacy has contacts with South Carolina that support the exercise of specific jurisdiction. In Calder and Carefirst, the defendants had no tangible connection to the forum states. Carepoint Pharmacy's direct sales to customers in the state, on the other hand, are tangible connections with South Carolina that are clearly both more substantial and more availing that those at issue in Calder and Carefirst. Unlike the defendants in Calder and Carefirst, Carepoint Pharmacy has purposefully availed itself to South Carolina by sending allegedly infringing products into South Carolina. The court need not analyze the effects of Carepoint Pharmacy's infringing activity within South Carolina because the infringing activity is alleged to have actually taken place in South Carolina. Therefore, the court need not employ the effects test to conclude that Carepoint Pharmacy is subject to specific jurisdiction in South Carolina on Carepoint Inc.'s claims. The court thus denies Carepoint Pharmacy's motion to dismiss.

### B. Venue

In the alternative, Carepoint Pharmacy argues that venue is improper and asks that this court either dismiss the matter pursuant to Fed. R. Civ. P. 12(b)(3) or transfer it to the Northern District of Illinois pursuant to 28 U.S.C. § 1404. Because venue is proper, the court rejects the request.

A party may move to dismiss a matter for "improper venue." Fed. R. Civ. P. 12(b)(3). The question of whether venue is "improper" in a civil case is governed by 28 U.S.C. § 1391(b), which states that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

For the purposes of venue, a business entity is "deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2).

The court has found that Carepoint Pharmacy is subject to personal jurisdiction in South Carolina. Therefore, for the purposes of § 1391, Carepoint Pharmacy is deemed to reside in South Carolina. Thus, venue is proper in the District of South Carolina under § 1391(b)(1). Carepoint Pharmacy argues that venue is improper under § 1391(b)(2) because a substantial part of the events that gave rise to Carepoint Inc.'s claims did not occur in South Carolina. Finding that venue is proper under § 1391(b)(1), the court need

not consider § 1391(b)(2). Therefore, the court denies the motion to dismiss or, in the alternative, to transfer venue because the current venue is proper.[3]

### IV. CONCLUSION

For the foregoing reasons the court **DENIES** the motion.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**July 22, 2020
Charleston, South Carolina**

---

[3] In its motion, Carepoint Pharmacy only argues that the matter should be transferred because venue is improper; it does not request transfer in the event that the court finds that venue is proper.